UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

JUSTIN R.,

              Plaintiff,

-v-

COMMISSIONER OF SOCIAL SECURITY,

              Defendant.
_____

22-CV-06148-MJR
DECISION AND ORDER

Pursuant to 28 U.S.C. §636(c), the parties consented to have a United States Magistrate Judge conduct all proceedings in this case. (Dkt. No. 14)

Plaintiff Justin R.[1] ("Plaintiff") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "defendant") denying his application for Disability Insurance Benefits ("DIB") pursuant to the Social Security Act (the "Act"). Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the following reasons, Plaintiff's motion (Dkt. No. 10) is granted, and defendant's motion (Dkt. No. 11) is denied.

---

[1] In accordance with the District's November 18, 2020, Standing Order, plaintiff is identified by first name and last initial.

## BACKGROUND[2]

Plaintiff filed for DIB on January 31, 2017, with an alleged onset date of November 20, 2014. (Administrative Transcript ["Tr."] 251-52). The application was initially denied on March 8, 2017. (Tr. 131-36). Plaintiff filed a written request for hearing on March 13, 2017. (Tr. 137-38). On March 9, 2019, Administrative Law Judge ("ALJ") Paul Greenberg issued an unfavorable decision. (Tr. 109-25). The Appeals Council ("AC") then remanded the case on July 20, 2020. (Tr. 126-30).

On remand, ALJ Brian Kane held a new hearing via telephone on November 20, 2020, at which Plaintiff appeared and testified, along with counsel. (Tr. 58-97). A vocational expert also appeared and testified. The ALJ issued another unfavorable decision on December 1, 2020. (Tr. 12-28). Plaintiff appealed to this Court.

## DISCUSSION

I.   *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential. Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts." *Smith v.*

---

[2] The Court presumes the parties' familiarity with Plaintiff's medical history, which is summarized in the moving papers.

*Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force," the Court may "not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Thus, the Court's task is to ask "'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review. The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588. While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct. The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence. Further, the Commissioner's factual conclusions must be applied to the correct legal standard. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). Failure to apply the correct legal standard is reversible error. *Id.*

II.   <u>*Standards for Determining "Disability" Under the Act*</u>

A "disability" is an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). The

Commissioner may find the claimant disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." *Id.* §§423(d)(2)(A), 1382c(a)(3)(B). The Commissioner must make these determinations based on "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (quoting *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process." 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4). First, the Commissioner determines whether the claimant is "working" and whether that work "is substantial gainful activity." *Id.* §§404.1520(b), 416.920(b). If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience." *Id.* §§404.1520(b), 416.920(b). Second, if the claimant is not engaged in substantial gainful activity, the Commissioner asks whether the claimant has a "severe impairment." *Id.* §§404.1520(c), 416.920(c). To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* §§404.1520(c), 416.920(c). As with the first step, if the claimant does not have a severe impairment, he

or she is not disabled regardless of any other factors or considerations.  *Id.* §§404.1520(c), 416.920(c).  Third, if the claimant does have a severe impairment, the Commissioner asks two additional questions:  first, whether that severe impairment meets the Act's duration requirement, and second, whether the severe impairment is either listed in Appendix 1 of the Commissioner's regulations or is "equal to" an impairment listed in Appendix 1.  *Id.* §§404.1520(d), 416.920(d).  If the claimant satisfies both requirements of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience.  *Id.* §§404.1520(d), 416.920(d).

If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five.  Before doing so, the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity ["RFC"] based on all the relevant medical and other evidence" in the record.  *Id.* §§404.1520(e), 416.920(e).  RFC "is the most [the claimant] can still do despite [his or her] limitations."  *Id.* §§404.1545(a)(1), 416.945(a)(1).  The Commissioner's assessment of the claimant's RFC is then applied at steps four and five.  At step four, the Commissioner "compare[s] [the] residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work."  *Id.* §§404.1520(f), 416.920(f).  If, based on that comparison, the claimant is able to perform his or her past relevant work, the Commissioner will find that the claimant is not disabled within the meaning of the Act.  *Id.* §§404.1520(f), 416.920(f).  Finally, if the claimant cannot perform his or her past relevant work or does not have any past relevant work, then at the fifth step the Commissioner considers whether, based on the claimant's RFC, age, education, and work experience, the claimant "can make an adjustment to other work."  *Id.*

§§404.1520(g)(1), 416.920(g)(1).  If the claimant can adjust to other work, he or she is not disabled.  *Id.* §§404.1520(g)(1), 416.920(g)(1).  If, however, the claimant cannot adjust to other work, he or she is disabled within the meaning of the Act.  *Id.* §§404.1520(g)(1), 416.920(g)(1).

The burden through steps one through four described above rests on the claimant. If the claimant carries his burden through the first four steps, "the burden then shifts to the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform."  *Carroll*, 705 F.2d at 642.

III. *The ALJ's Decision*

Preliminarily, the ALJ found Plaintiff's last date insured to be December 31, 2019. (Tr. 17).  At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity from November 20, 2014, the alleged onset date, through December 31, 2019, the last-insured date. (Tr. 17).  At step two, the ALJ found that Plaintiff has the following severe impairment: post-traumatic stress disorder ("PTSD").  (Tr. 17).  At step three, the ALJ concluded that through the date last insured, Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 18-20).

Prior to proceeding to step four, the ALJ assessed Plaintiff's RFC and concluded that he can perform work at all exertional levels so long as such work entailed no more than occasional interactions with coworkers and the public, and no more than frequent contact with supervisors. (Tr. 20).

At the fourth step, the ALJ found that Plaintiff could perform his past relevant work. (Tr. 23). In the alternative, the ALJ found that Plaintiff was able to meet the mental demands of unskilled work. (Tr. 24). Therefore, the ALJ found that Plaintiff was not under a disability from November 20, 2014, the alleged onset date, through December 31, 2019, the date last insured. (Tr. 24).

IV.   *Plaintiff's Challenge*

Plaintiff argues, *inter alia,* that the case must be remanded because the ALJ did not evaluate Plaintiff's Compensation and Pension examination performed by the Veterans Administration ("VA"). The Court agrees.

Plaintiff served in the United States Army, with two deployments to Iraq. (Tr. 428). He was diagnosed by the VA as suffering from PTSD due to seeing "particularly heavy action." (Tr. 387). Plaintiff received the bulk of his treatment for PTSD from the VA. On June 24, 2015, Dr. David Coron, Ph.D., of the VA, performed a detailed Compensation and Pension examination of Plaintiff to determine the extent of his PTSD. (Tr. 401-407). Dr. Coron opined that due to his PTSD, Plaintiff had marked alterations in arousal and reactivity evidenced by irritable behavior or angry outbursts with little to no provocation; problems with concentration; clinically significant distress or impairment in social, occupation, or other areas of functioning; panic attacks more than once a week; difficulty in establishing and maintaining effective work and social relationships; difficulty adapting to stressful circumstances including work or work-like settings; and impaired impulse control, such as unprovoked irritability with periods of violence (Tr. 406-07). Dr. Coron concluded that Plaintiff "would be as likely as not be capable of securing and continuing

in a low stress type job." (Tr. 407). The VA found Plaintiff to be 70% disabled due to his PTSD. (Tr. 370).

The ALJ gave "little weight" to Plaintiff's 70% disability rating, primarily because it "failed to provide a function-by-function analysis." (Tr. 22). However, Dr. Coron's opinion following the Compensation and Pension examination would appear to provide just such a functional analysis. The ALJ does not even mention Dr. Coron, nor does he provide an adequate explanation for rejecting Dr. Coron's detailed opinion.

The Compensation and Pension examination would seem to directly contradict the ALJ's finding that Plaintiff could perform a full range of work at all levels, with minimal interaction limitations. (Tr. 20). Dr. Coron opined that Plaintiff would be unlikely to be able to maintain low stress work; Plaintiff had marked alterations in reactivity with little to no provocation; panic attacks weekly; and difficulty adapting to stressful situations including work or work-like settings. (Tr. 406-07). These findings appear to be contrary to the ALJ's ultimate Step Four finding that Plaintiff could perform his past skilled and semi-skilled work. (Tr. 23). They also appear to undermine the ALJ's alternate Step Five finding that Plaintiff could meet the mental demands of unskilled work—particularly concerning Plaintiff's ability to respond to stress. (Tr. 24) As such, the ALJ's omission of any substantive evaluation of the Compensation and Pension examination was a harmful error and warrants remand.

Under the Social Security regulations applicable to this case, the ALJ was obligated to "evaluate every medical opinion we receive". 20 C.F.R. §404.1527(c). An ALJ must consider all pertinent medical evidence in the record regarding a plaintiff's impairments and must explain why he or she relied on certain opinions of record and not on others. *Shaw v. Chater,* 221 F.3d 126, 135 (2nd Cir. 2000). An ALJ errs by rejecting an opinion without providing an explanation. *See Chmura v. Berryhill*, No. 16-CV-205-FPG, 2017 WL 1829728, at *3 (W.D.N.Y. May 8, 2017); *Parks v. Colvin,* No. 15-CV-6500-FPG, 2017 WL 279558, at *4 (W.D.N.Y. Jan. 23, 2017). This extends to opinions that are rendered by other governmental agencies, such as the VA. "[W]hile the determination of another governmental agency that a social security disability benefits claimant is disabled is not binding on the Secretary, it is entitled to some weight and should be considered." *Evans v. Colvin*, 649 F. App'x 35, 37–38 (2d Cir. 2016); *see also Machia v. Astrue,* 670 F.Supp.2d 326, 336 (D.Vt.2009) (warning that VA determination may not be "completely ignore[d]" and observing that "[t]he point of the Second Circuit's admonition to accord VA determinations 'some weight' is that in addition to the oral testimony and medical evidence, VA rating decisions are another item to be placed on the evidentiary scale").

Compensation and Pension examinations have been held "highly relevant and probative" to Social Security determinations. *See Scott v. Berryhill*, No. 6:16-CV-06780-MAT, 2018 WL 6582794, at *5 (W.D.N.Y. Dec. 14, 2018). This was reiterated in *Biggins* where the Court remanded the case because the ALJ ignored a Compensation and Pension examination that spoke to the nature and severity of the claimant's severe impairment of PTSD. *See Biggins v. Comm'r of Soc. Sec.*, No. 18-CV-00643, 2019 WL 4688733, at *4 (W.D.N.Y. Sept. 26, 2019)("Despite the ALJ's awareness of the VA

disability determination, there is nothing in this record demonstrating the ALJ considered the Compensation and Pension examinations, so it cannot be inferred by the reader how it was weighed or considered").[3]

The Social Security Administration has created special procedures for Wounded Warriors—soldiers whose disability occurred while on active military duty. *See* https://www.ssa.gov/pubs/EN-05-10030.pdf (military service members can receive expedited processing). Plaintiff is one of those Wounded Warriors. He served our country and returned from war with PTSD. The ALJ needed to fully and thoroughly evaluate Plaintiff's stress limitations due to his PTSD. The ALJ's failure to properly evaluate the VA's Compensation and Pension examination, which arguably supports greater limitations than those included in the ALJ's RFC determination, warrants remand.[4]

---

[3] The Court further notes that here, the VA was in essence Plaintiff's treating physician, and that the VA no doubt has a great deal of expertise in evaluating and treating combat veterans for PTSD.

[4] Plaintiff also argues that the ALJ erred by failing to properly evaluate stress limitations in the opinions of consultative examiner Dr. Jeanne Shapiro, Ph.D., and state agency consultant Dr. S. Juriga, Ph.D. The defendant should also consider this argument on remand.

## **CONCLUSION**

For the above reasons, Plaintiff's motion for judgment on the pleadings (Dkt. No. 10) is granted and defendant's motion for judgment on the pleadings (Dkt. No.11) is denied. The case is remanded for further administrative proceedings.

The Clerk of Court shall take all steps necessary to close this case.

**SO ORDERED.**

Dated:   August 1, 2024
         Buffalo, New York

_____
MICHAEL J. ROEMER
United States Magistrate Judge